***********
The Full Commission has reviewed the prior Order and prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission modifies and affirms the Deputy Commissioner's awarding of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated May 29, 2002, as:
 STIPULATIONS
1. On November 24, 1999, an employment relationship existed between plaintiff and defendant-employer.
2. The carrier on the risk for workers' compensation purposes on November 24, 1999, was Atlantic Mutual Insurance Company.
3. The date of the alleged injury by accident that is the subject of this claim is November 24, 1999.
4. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, with the employer employing the requisite number of employees to be bound under the Act's provisions.
5. Plaintiff's average weekly wage will be calculated pursuant to a Form 22 wage chart that was submitted by defendants subsequent to the hearing.
6. In addition to the physician's deposition transcript, the parties stipulated into evidence in this matter a packet of plaintiff's medical records.
7. The issue to be determined as a result of this hearing is whether plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer on November 24, 1999, and if so, to what benefits is she entitled.
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner in the matter, plaintiff was 57 years old, married, and residing in Sanford. Plaintiff was educated through the eleventh grade. She had worked for the same employer for 22 years and had no education, skills or abilities that would enable her to work for another employer in the competitive market.
2. Plaintiff began working on an assembly line for defendant-employer in 1978, assembling carburetors. This job allowed her to sit or stand as desired, but plaintiff primarily sat while performing the job. Plaintiff testified, and the Form 22 confirms, that she earned $10.58 per hour. However, as of September 1999, plaintiff's wages were increased to $10.91 per hour.
3. Prior to November 1999, plaintiff had preexisting medical conditions of obesity, hypertension, asthma, and bilateral knee osteoarthritis but was able to work at her job with defendant-employer with those conditions. In 1989, plaintiff underwent a left knee arthroscopy, at which time she was under the care of Dr. Ciliberto. In early 1999, plaintiff was involved in a motor vehicle accident that caused, among other injuries, injuries to her knees. Plaintiff was treated by Dr. Ciliberto for these injuries. Plaintiff missed approximately six months of work on a medical leave of absence due to this motor vehicle accident.
4. Towards the latter part of 1999, plaintiff's supervisor advised the plaintiff that she had paid vacation time that she would lose if it was not used by the end of the calendar year. Therefore, the plaintiff requested vacation for the week of Thanksgiving and the week following Thanksgiving (November 22 through December 3). The Employer approved the vacation request. Because she was on vacation, she was not at work on payday and had not received her paycheck while at work. Plaintiff wanted to pick up her paycheck so that she could use it to go Christmas shopping. Plaintiff had spoken to a coworker, Israel Martinez, prior to picking up her paycheck to tell him that she was coming in to do so. While Mr. Martinez is not a manager, he occasionally was left in charge of the other employees.
5. Defendant-employer had a procedure in place for employees to receive paychecks when they are not at work on their payday. Employees were permitted to come to the office to pick up their paycheck, but they had to sign a form for receipt thereof. If the employees did not come to the office to pick up their paycheck, the paycheck would be mailed to them. Had plaintiff not picked up her paycheck on November 24, 1999, it would have been mailed to her. However, picking up her paycheck bears a reasonable relationship to plaintiff's employment due to the fact that there was a policy and procedure in place for employees to pick up their paychecks and sign for them when they were not at work on payday, and due to the obvious fact that a paycheck is issued in payment for work performed. Furthermore, by virtue of the fact that there was an established procedure in place, and also because plaintiff told Israel Martinez, her acting supervisor at the time, that she planned to pick up her paycheck, plaintiff was authorized to come to work to do so.
6. Plaintiff, as all employees, derives an obvious benefit from being paid to perform work. Yet defendant-employer also derives a benefit from employees getting paid and receiving their paychecks in a timely, efficient manner, as it serves as further incentive for their continued work. Furthermore, defendants derive a small monetary benefit from employees picking up their paychecks, in that defendant-employer would not, therefore, need to incur the cost of postage to mail the paychecks to employees who are not at work on payday.
7. On November 24, 1999, plaintiff sustained an injury by accident arising out of and in the course of her employment while picking up her paycheck when she fell off a curb as she stepped aside to let coworkers pass her when she left the plant. The coworkers came to plaintiff's immediate assistance, and plaintiff was transported by ambulance to Central Carolina Hospital.
8. Plaintiff again came under the care of Dr. Ciliberto, an orthopaedic surgeon, for treatment of a right displaced ankle fracture with ankle ligament injuries. Dr. Ciliberto performed two surgeries on plaintiff's ankle, the first one shortly after the injury, a repair of the distal tibiofibular syndemosis separation and open reduction internal fixation of the right ankle fracture. On January 21, 2000, Dr. Ciliberto performed a second surgery to remove two screws that he had inserted during the initial surgery.
9. Plaintiff remained under the care of Dr. Ciliberto. On March 1, 2000, the physician noted that plaintiff was ambulating with a walker "principally because of her very stout condition." At this evaluation, Dr. Ciliberto noted that plaintiff's right ankle was clinically stable and not significantly tender. He prescribed full weight bearing ambulation on her right ankle as tolerated. By April 12, 2000, Dr. Ciliberto noted that plaintiff's right ankle fracture had healed, and he recommended progressive weight bearing to full weight bearing on the right foot and ankle.
10. Due to plaintiff's marked obesity, an edema reduction boot was prescribed but did not fit due to the circumference of plaintiff's right thigh. She then was prescribed a different sort of edema reduction pump, which she was to use four to five times daily. On August 13, 2000, Dr. Ciliberto again noted that plaintiff was using a walker and was therefore unable to return to work. He encouraged plaintiff to continue with weight reduction and weight bearing.
11. By December 2000, plaintiff's right ankle was "in advanced healing" and her ankle was only a little uncomfortable. By this time, plaintiff, who was still using a walker, was complaining primarily of bilateral knee pain. Dr. Ciliberto signed a disability statement indicating that plaintiff was not gainfully employable because of the extensive arthritis in her knees.
12. Dr. Ciliberto determined that plaintiff was at maximum medical improvement as a result of her right ankle injury as of March 27, 2001. In the course of his deposition testimony, Dr. Ciliberto assigned a ten percent (10%) permanent partial impairment rating to plaintiff's right lower extremity. Plaintiff continued to treat with Dr. Ciliberto after March 27, 2001, but the medical records indicate that this treatment was only for her prior knee problems, and not for her work-related ankle injury.
13. Plaintiff uses a walker because she can only bear a little weight on her ankle. At home, she uses a little stool to avoid standing on her feet when she washes dishes. Since the fall, she does not do a lot of cooking and her daughters help her with cleaning and her housework. Although she thought that she could sit down and do her job duties at Magnetti Marelli, she would have problems getting to her work station and moving around within the plant. She would not be able to carry anything (because of her need to use the walker), and she would have a difficult time "getting around to the bathroom and the break room".
14. Celestina A. Nicholas, a human resource benefit clerk for Magnetti-Marelli, testified that plaintiff asked to return to work for the employer. However, the employer would not allow her to return to work because she would have to use a walker. Ms. Nicholas testified that "There just was no way that she will be able to work with the walker in the plant."
15. Plaintiff suffered from several pre-existing health conditions prior to her compensable injury. She suffered from advanced osteoarthritis of both knees, hypertension, and obesity. When Dr. David Ciliberto was deposed, he testified that in his opinion, the claimant was not employable when she is considered as a composite person. He specifically testified that he did not believe that she was employable because "She has difficulty walking because of her advanced osteoarthritis of knees and her morbid obesity." He also noted her continued need for an assistive device (walker) for walking and her continued problems with swelling and pain in her ankle (that was fractured as a result of the compensable injury).
16. Given plaintiff's age, education, pre-existing health problems, and ongoing problems with walking, plaintiff has met her burden of proving that although she may be capable of some work, it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, inability to be trained, to seek other employment. There was no evidence that plaintiff was capable of doing anything other than the work she had done for the past 20 plus years.
17. Plaintiff's average weekly wage was calculated according to the Form 22 by dividing plaintiff's gross pay by the number of weeks she worked minus the number of weeks she missed seven or more consecutive days during the preceding 52 week period, or, her gross pay divided by 27 weeks.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Pursuant to the Form 22, plaintiff's average weekly wage as of November 24, 1999 was $482.69, which yields an applicable compensation rate of $321.81. N.C. Gen. Stat. § 97-2(5).
2. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer on November 24, 1999, to her right foot (ankle) when she came to the employer's premises to pick up her paycheck and tripped and fell off a curb. N.C. Gen. Stat. §97-2(6). While she was not scheduled to be at work on November 24, 1999, the action whereby plaintiff picked up her paycheck, an activity that she was authorized to undertake pursuant to an informal employer policy, reasonably related to her employment and in fact directly furthered the employers' business. Thus, plaintiff's injury arose out of and in the course of her employment. See Choate v. Sara Lee Prod.,133 N.C. App. 14, 17,514 S.E.2d 529 (1999).
3. An injured employee can prove that she is disabled in one of four ways with the production of (1) medical evidence that she is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but has after a reasonable effort been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) evidence that she has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Prod.Distrib. 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
4. As a result of her compensable right foot injury, plaintiff was temporarily totally disabled from November 25, 1999, through March 27, 2001, the date by which she was at maximum medical improvement as a result of her compensable foot injury. N.C. Gen. Stat. § 97-29. Her disability continues inasmuch as the employer would not return her to her old job and inasmuch as her age, education, skill set, and infirmities make it futile for plaintiff to seek work elsewhere in the competitive market.Russell v. Lowes Prod. Distrib. 108 N.C. App. 762, 765,425 S.E.2d 454, 457 (1993).
5. Defendants are entitled to a credit for the six months of short-term disability benefits paid to plaintiff pursuant to an employer-funded disability plan. N.C. Gen. Stat. § 97-42.
6. Plaintiff is entitled to receive medical compensation for related medical treatment that was or is reasonably necessary to effect a cure, give relief, or lessen the period of her disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25, as limited by97-25.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability benefits from November 25, 1999, at the weekly rate of $321.81, subject to the attorney's fee approved below and the credit owed to defendants. Defendants shall continue to pay such compensation until plaintiff becomes able to return to work or until further order of the Industrial Commission.
2. Defendants shall pay in two lump sums compensation that has accrued to the date of this Opinion and Award, with interest at 8 percent per year from the date of the hearing before the Deputy Commissioner. Defendants shall pay all of the interest to plaintiff. Defendants shall pay 25% of such compensation to plaintiff's counsel and the remaining 75% to plaintiff. Thereafter, defendants shall continue weekly payments of $321.81, with every fourth check being payable to and going directly to plaintiff's attorney. The credit awarded under paragraph 1 above shall come out of the 75% otherwise due plaintiff.
3. Defendants shall also provide for all related medical treatment that is or was reasonably necessary to effect a cure, give relief, or lessen the period of plaintiff's disability. Defendants shall reimburse those who may have paid for such treatment.
This 27th day of July 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER